Evans, J.
delivered the opinion of the Court. .
In' this case, two questions arise out of the charge of the pre~ siding Judge, which it is necessary to consider.
1st. Is the possession of a parent, after a gift to a child, not-t¡le child may be a minor, and reside with the parent, a badge of fraud ?
2d. If a solvent man makes a voluntary gift to his child, and in winding up his affairs he should be found to be insolvent, ia.súch a gift fraudulent against subsequent creditors, without notice 1
On the first question I would remark, that in the case of Terry v. Belcher, (ante, p. 568) decided during the present term, the Court held, that the seller’s remaining in possession was not in itself a fraud, but only evidence of‘fraud, which might be satisfactorily explained ; and in the case of Reeves v. Harris, (ante, p. 563) that the delivery of possession, although it furnished a presumption, that the right of property had been transferred, was satisfactorily explained, by showing, that it was a part of the original contract, that the title was to remain'in the seller, until the price was paid.
Both of these cases were decided adversely to the claims of creditors, and are in couformity with the opinion expressed by Lord Mansfield, in Worseley v. De Mattos, 1 Bur. 484; “that the not taking possession, being only evidence of fraud, may be explained.” In the case of Cadogan v. Kennett, Cowp. 435, the same learned Judge said, that “ the question in every case is, whether the act done is a bona fide transaction, or whether -it is a trick and contrivance to defeat creditors.” If the possession of the seller be only prima facie evidence of fraud, can the possession of a donor be any thing more ? It seems to me, that the principle is the same in both cases; viz. that possession is visible evidence of ownership, and if unexplained, will be regarded as fraudulent, in favor of creditors who may be defrauded of their just rights, by this false light of property held out to the world. But the question under consideration rests on higher grounds than these: in the case of the Executors of Curry v. Ellerbe, decided in the Constitutional Court, Spring Term, 1820, Judge Colcock, in delivering the opinion of the Court, said, “ There is a distinction to be made between cases where the donor and donee live apart, and those where they necessarily *579 live together. In the former it has been held, ever since Tvvyne’s case, that where the possession continued in the donor unexplained, the gift would be deemed fraudulent. But in the case of a father and a child, who from their connexion must live together, nt least until the child comes of age, it would have the effect of destroying all gifts, to say that the possession must be considered that of the father.” And. the Judge further remarked, that “the point had been expressly decided in the case of. Kid v. Mitchell, 1 N. & M. 334, end in many others.” To this I add, that I know of no case, either English, or American, in which a contrary doctrine has been held. There may be some dicta to the contrary, but no decided case.
In the case of Smith v. Littlejohn, 2 M‘C. 362, the plaintiff was an infant, and resided with her father. In Jacks v, Tunno, Chancellor Rutledge said, “ In this case possession and payment of taxes cannot be considered as badges of fraud, for the donees were infants of tender years, and therefore incapable of taking charge of the property.” 3 Desaus. 5. It is true, that in the case of Madden v. Day, (ante, p. 337) it would seem from the reasoning of Judge Nott, that he entertained a different opinion. He says, “ the only circumstance which can be relied on, to repel the presumption, is, that the possession by a parent, of the property of his infant child, of whom he is the natural guardian, is not inconsistent with the nature of the claim set up by the child. But, if it may be evaded by so flimsy a pretext, as by conveying to one under his own roof, and for whom he is bound to provide, the rule is of but little value.” He adds, “ It is not my intention to dwell on this part of the case, as it is not called for on this occasion.” And in another part of the opinion, he said that it was not necessary for a decision of the case, and that he should not express any decided opinion on the point, (ante, p. 340.) I take it, therefore, that the case of Madden v. Day does not decide any principle adversely to the doctrine contained in this opinion; nor ean any other inference be drawn on this subject, from that case, except that the Judge, who delivered the opinion of the Court, was inclined to come to a different conclusion, but expressly disclaims any intention of deciding the point. Nor do I consider the opinion of this Court, in the case of Hudnal v. Wilder, 4 M‘C. 294, as militating in the slightest degree with the opinion herein expressed. That, *580 it must be remembered, was the case of a subsequent purchaser, af)£] on different principles.
& *s not necessal7 for any practical purpose, to discuss the question, whether the statutes of the 13th and 27th Eliz. against £rau(jujenj conveyances, are merely in affirmance of the common law, as Judge Nott, and other distinguished jurists, have supposed. It matters not from whence we have derived the wholesome doctrine of presumptive frauds. The rules are now well settled, and it would be an unprofitable discussion at this day, to inquire, whether we derive them from these statutes, or whether they have come to us from the remoter fountains of the common law. The consequences are the same. It is now well settled in England, that a voluntary conveyance of land is void against a subsequent purchaser, even with notice. I am satisfied, that this is carrying the doctrine of presumptive fraud beyond reasonable inference, and common sense. How can any man be said to be defrauded, by.what he knew existed before he purchased? This principle, the existence of which the wisest Judges in England have regretted, has been rejected in the case of Hudnal v. Wilder, (supra). Subsequent purchasers of both real and personal property are there put upon the same fooling, and both are protected against prior voluntary conveyances, when the purchasers have been deceived, and defrauded, by a concealment of the fact, that the seller had before conveyed the property to another person. This doctrine can hardly be supposed to depend on any legal inference, or presumption of fraud. The act of selling, with a concealment of the prior conveyance, is a palpable fraud in itself. It is suppressio veri, and if men’s intentions can be inferred from their acts, I think we may fairly conclude, that the,first conveyance was made with intent to effect what was afterwards effected, to wit, to defraud a subsequent purchaser. This is the doctrine laid down in Hudnal v. Wilder, and nothing more. I think, therefore, we may fairly conclude, that there is no legal foundation for saying, that the possession of a parent, after a gift to a child, who resides with him, is a badge of fraud; but on the contrary, the possession in such case may be considered the possession of the donee, or, as it is said in the case of Kid v. Mitchell, (supra) the possession is consistent with the donee’s title,
*581 The second question to be considered, is, whether, if a solvent man make a voluntary gift to his child, and in the winding up of his affairs lie should be found insolvent, such a gift is void as a fraud upon subsequent creditors, without notice.
1 have already expressed, incidentally, my opinion of the effect of notice to a purchaser; and I can see no reason for a distinction between him who buys with notice, and him who trusts with notice. I shall therefore proceed to inquire, how a creditor without notipe would be affected by a gift under such circumstances. I cannot make up my mind to assent to the broad proposition laid down. I have always considered the law as well settled, that the owner of property might, bona fide, dispose of it at his pleasure, with this single restriction, that he must be just, and pay his debts, before he is generous. If a man makes a gift of all, or the greater part, of his estate, to his children living with him, and goes on from year to year contracting debts, the property in the mean time remaining in his possession, and the knowledge of the existence of the gift confined to his own family, and in the end becomes insolvent; in such case, 1 think, a jury might fairly presume, that he had made the fílmala fide, and with a view to avoid the payment of future debts. But I am yet to learn, that, by the laws of this State, a gift of a small portion of a man’s estate to his child living with him, made when in prosperous circumstances, and when there, is no fair ground for the inference that he was looking to insolvency, and providing for his family in anticipation of that event, will be regarded as fraudulent, when, after a lapse of ten or fifteen years, he becomes insolvent from the disastrous issue of subsequent speculations, from a decline in the value of property, or from accident, or misfortune, merely because his creditors may not have had notice of the gift. Secrecy, like possession, may be evidence of fraud; but if the transaction be bona fide, it is as capable of being explained as any other fact. The law does not require, (and it is greatly to be regretted that it does not) that gifts of personal property should be reduced to writing, or made public by recording; and until it does, I shall feel myself bound dicere et non facere legem, and to say, if there was no fraudulent intent, such a gift is not void, although the Creditors might not know of its existence. In Iley v. Niswanger, 1 M‘C. Ch. *582 521, it is said, that a subsequent creditor can come in only on the ground of fraud.
It is said, however, that this gift is void, because some portion of the money arising from the sale of the negro, was applied to pay a debt subsisting at the time the gift was made. On this part of the case the facts are somewhat obscure, it is said in the argument, that Col. Peay’s debt was a subsisting debt, and about $10, of the money arising from the sale was applied to the payment of this debt. Col. Peay, in his evidence, says he was security for Beckham to the Bank of the State of South-Carolina, in September, 1817, for $9000; that in 1823, he indorsed for him, to the Salisbury Bank, for $4000; and that to secure himself against these liabilities, he took a confession of judgment for $6000. He says, a considerable portion-of thé debt to the Bank of the State of South-Carolina was paid ; but it does not appear, how much of the $6000 remained unpaid: nor does it appear, how other debts were paid out of the residue of Beckham’s property, in preference to Peay’s debt; but I presume it arose from his suffering subsequent creditors to get their debts into judgments, and executions, first. There being doubts as to the facts connected with this part of the case, I shall lay down only the general principles, by which it is to be governed.
The general rule unquestionably is, that every voluntary conveyance is void against existing creditors. Lord Hardwicke, in the case of Townshend v. Windham, says, that “ a man actually indebted, and conveying voluntarily, always means to be in fraud of his creditors.” 2 Ves. Sen. 11. But it must be recollected, that all the cases, Townshend v. Windham, Russel v. Hammond, 1 Atk. 13, Fitzer v. Fitzer, 2 Id. 511, in which Lord Hardwicke holds this language, are cases where there was no other property, out of which the existing debts could be satisfied. These were all cases in Equity, where bills had been filed to have satisfaction out of the estate voluntarily settled. But it certainly never can be supposed, that this learned Judge meant to say, that a gift made by a father of the one-twentieth part of his property, and he indebted to a small amount at the time, shall be set aside, because a small amount of a subsisting debt remains unsatisfied after a lapse of ten years; *583 and when the donor still has funds amply sufficient to pay this debt, but which had become applicable to subsequent debts, by the negligence, or indulgence, of the creditor. I understand from the report, that McDaniel’s debt was contracted long after the gift, but was older in execution than Peay’s debt, and therefore intitled to be first paid. The amount for which Harriet sold, was first applicable to the payment of McDaniel’s execution; and after the extinguishment of that case, there remained about $10, which was applied to Peay’s debt, or the debt for which Pouy had been Beckham’s security. If, therefore, McDaniel’s debt bad been for an amount of $10' more, no part of the sale of Harriet would have been applied to pay a debt subsisting at ,the time of the gift, and then, I presume, the gift could not have been impeached on this ground. Now, as Judge Nott, has said in another case, “ it is a flimsy rule, the application of which depeuds on such a circumstance.”
I will illustrate my opinion on this question, by the following eases. A man in prosperous circumstances, worth $50,000, gives his son $5000, to set him up in' the world ; ten years afterwards the father becomes insolvent, and there is found among his debts, one of $100, which existed at the time of the gift: or, to put another case, a man in a city, worth $50,000 in houses and merchandize, gives $5000 to his sb» ; and ten years afterwards a fire, or a storm, destroys all his rproperty, and reduces him to poverty in a single night, and'among his debts is found one of small amount, which existed at the time the gift was made. In these, and similar cases, I apprehend no Court would hold, that the gift to the son should be set aside, and subsequent creditors let in to sweep the whole of the property' given to the son, on the ground, as Chancellor Kent says, in Reade v. Livingston, of “ equal apportionment, and, marshalling of assets.” 3 Johns. Ch. R. 496. It seems to me, therefore, that the rule laid down in the cases before cited, and so earnestly insisted on by Chancellor Kent, in the case of Reade v. Livinuston, (supra) must be taken in reference to the particular circumstances of those cases, to wit, that the estate settled, constituted the bulk of the donor’s estate; and that the general rule must be taken, with the exception laid down in Kwkley v. Blakeney, that “where a man owes a sum of money, at the time of making a gift to his child, without eon- *584 sideration, avid the money is never paid, the presumption of fraud'can be rebutted only by showing very abundant property, over and above the gift, retained by the donor, for the purpose of paying his debts: and if, in the ordinary course of events, such property turns out to be inadequate to the discharge of his debts, the presumption of fraud remains, although the property reserved may have been deemed originally adequate to that purpose, if exclusively so applied.” 2 N. & M. 546. The Judge adds, “the case must be an exceedingly fair one, not to be deemed fraudulent, where a debt clue prior to the gift shall have remained unpaid.” On the second trial of that case, the jury found a second verdict for the plaintiff, upon full proof, that the donor had reserved an ample sufficiency to pay all his debts, but had been prevented from so doing by the circumstance, that the principal part of the property reserved had been sacrificed at a sheriff’s sale for one-fiftieth of its value. I was the attorney of the defendant, and acquiesced in the verdict, under the belief, that by the laws of this State such a gift was good, if free from all taint of fraudulent intent, and the donor had reserved an abundant sufficiency to pay his debts, although the property reserved might have turned out ultimately inadequate, by reason of some unforeseen event; as by losses in trade, as m the case of Jacks v. Tunno, 3 Desaus. 1; or by fire; or storms; or by sacrifice of property at sheriff’s sale; and I might add, as applicable to this case, where the pre-existing creditor stood by, and suffered the subsequent creditors to sweep away the reserved property, by getting judgments and executions before him. I take the true rule t.o be, that the reserved property must be sufficient in the ordinary course of human events.
In the ease of Fitzer v. Fitzer, 2 Atk. 512, Lord Hardwieke asked the counsel, if there was any instance in that Court where a conveyance from a husband to a wife, without any pecuniary consideration moving from the wife, (and I take a gift to a child to depend on.the same principle) had been held good against creditors. It may be, that in Equity there is no such case; but in the case of Cadogan v. Kennett, (supra,) Lord Mansfield held, “that the circumstance of a man being indebted at the time of his making a voluntary conveyance, is only an argument, of fraud. The question, in every case, is, whether the act done is bona fide, or whether it is a’trick and contrivance to defeat *585 oreditbvs.” In that case, Kennett, the defendant, was a creditor of Lord Montfort, at the time when the settlement was made, and yet the settlement was sustained.
It seems to me, therefore, that the following positions are . supported by principle, and clearly deducible from the authorities :
1. That a voluntary gift to a child is,hot necessarily void, as to existing creditors, but will be supported, if there be abundant proof, that the donor reserved an ample sufficiency to pay all his debts, and that the gift was made buna fide, and is free from all taint, or suspicion, of fraud.
2. That whether a sufficiency had been reserved, will be decided by the result, on the winding up of the donor’s affairs, except in those cases where it is clearly proved, that the insufficiency has resulted from extraordinary circumstances, which have destroyed or impaired its value, or prevented it from being applied to the payment of the debts, as in the case before stated.
3. That a voluntary gift will always be supported against a subsequent creditor with notice.
4. That it will be supported against a subsequent creditor without notice, if it be bona fide, and free from all trick and contrivance to defeat creditors.
5. That the possession of the donor,-if the donee be his child, and reside with him, is not a badge of fraud, but is consistent with the gift, and may be considered the possession of the donee.*
*586 If these positions be correct, and I entertain no doubt in reía™ tion to them, then the. charge of the Circuit Judge on the law, was wrong> and a new trial must be awarded.
Motion granted.

 Tbe several propositions, announced in the conclusion of the foregoing Opinion, do not appear to have been sanctioned, to their full extent, by the more recent determinations of the Court of Appeals. These exhibit an in» creased inclination to support the claims of creditors against voluntary aliena-tions of the debtor, on grounds of legal, or constructive fraud, without inquiry into the actual intention: and although the authority of Howard ». Williams has been more than once recognized, with reference to the questions necessarily involved in the appeal in that case, no disposition has been manifested, to make a more extensive application of the doctrines'advanced in the opinion. — vide M‘Elwee v. Sutton, 2 Bailey, 128, and Cordery v. Zealy, Ib. 205. There are several cases, still later, of the same character, which have not yet been reported. In one of them, that of Izard v. Izard, decided at Charleston, in April, 1831, on an appeal in Equity, Harper, J. in delivering the opinion of the Court, said, “ The general rule I take to be, that a volun *586 tary settlement is void as to existing creditors; but it admits a qualification, where the debts are utterly inconsiderable, when compared with the amount of tb'- donor’s property — like those which a man incurs for the weekly expenses of his house — so that, in,fact, he cannot be considered to be substantially indebted. The expression used in Lush v. Wilkinson, (5 Vesey, 387) that ‘ it must depend on this, whether he was in insolvent circumstances at the time,’ has occasioned some embarrassment. The word solvent is not very definite in its meaning. It can hardly mean, that the party, after making the voluntary conveyance, has retained property, to an equal, or greater, estimated amount than his debts. Perhaps, it may be said, that a man, indebted to near the estimated value of his property, is generally insolvent. It seems to me, from comparing-the cases, that the solvency must be judged of by the Court. If a man, indebted at the time of making a voluntary settlement, continues embarrassed, and becoming more and more, involved, ends in total, and acknowledged insolvency; this is evidence enough of insolvency as to rhe existing creditors, whose debts remain unpaid. The exception is, when the debts were so trifling and inconsiderable, that they cannot be regarded as having material y contributed to his subsequent failure. Whether there may not. be a subsequent exception, when the failure has been produced by some sudden and unforeseen casualty, such as fire, or tempest, it is not now necessary to inquire. The fluctuations in the value of property, occasioned by the mercaunle condition of the country, cannot however be ranked among those casualties. These fluctuations are constantly taking place, and men must calculate upen, and be prepared, for them. If a man were ever so much indebteat the time of making a settlement, and should afterwards pay oif his debts, and become totally unembarrassed, these debts could not affect the settlement, though he should subsequently become insolvent. He has proved his solvency at the time of the settlement. Or if he should so pay them off, with the exception of a ttifling balance, so inconsiderable as to make it evident, that the omission to pay that off also was a mere casualty, this might not vitiate. This was the case of Howard v. Williams, where out of very large debts, a very trifling balance, less, I believe, than fifty dollars, remained unpaid when the settlement was impeached; and it was held, that this was a, men- accident.” Johnson, J. aid O’Neall, J. concurred in the opinion delivered by Judge Harper. It.